# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTHONY ACCURSO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 17-cv-02626 (APM) |
| FEDERAL BUREAU OF PRISONS, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Anthony Accurso is incarcerated at FCI Seagoville in Seagoville, Texas. Plaintiff is a practicing Buddhist. In December 2016, Plaintiff asked that he be permitted to purchase and keep in his living area a zafu and zabuton. A zafu is a small circular cushion. A zabuton is a square-shaped mat. Both are used by adherents of the Buddhist faith to practice meditation. In January 2016, the Warden of FCI Seagoville denied Plaintiff's request. The Warden explained that under Bureau of Prisons ("BOP") policy, as set forth in the agency's Practical Guidelines for Administration of Inmate Religious Beliefs and Practices, the requested items are classified as "congregate religious items," instead of "personal religious items." "Personal religious items" may be kept with an inmate's personal property, whereas "congregate religious items" may not be. The Warden advised Plaintiff that meditation cushions were available in the prison chapel and accessible during regularly scheduled Buddhist services and at other times when the chapel is free, and that meditation mats were pending purchase. Not satisfied with the Warden's response, Plaintiff sought administrative review of the Warden's decision. But at all levels, the appeal was denied. At each stage, the decisionmaker relied on the BOP's classification of zafus and zabutons

as congregate religious items, not personal religious items, as the reason for affirming the Warden's decision.

Plaintiff brings this action under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, to challenge the BOP's "national policy or practice of prohibiting inmate possession of zafus and zabutons in inmate living areas." Compl., ECF No. 1, at 1. Plaintiff contests five aspects of the BOP's policy or practice, all under RFRA and each associated with a count in his Complaint: (1) the prohibition against inmates personally possessing zafus and zabutons (Count One); (2) the refusal to allow zafus and zabutons to be transferred between institutions (Count Two); (3) the restriction on use of zafus and zabutons to times when a chapel is open and available (Count Three); (4) the practice of not providing zafus and zabutons to inmates during transfer between institutions (Count Four); and (5) the denial of access to zafus and zabutons during the period after an inmate arrives at a new institution (Count V). *Id.* at 9–10. As relief, Plaintiff asks the court, in effect, to order the BOP to treat zafus and zabutons as personal religious items that an inmate can keep in his living area and take with him during transfers. *Id.* at 10–11.

Defendant Federal Bureau of Prisons moves under 28 U.S.C. § 1404(a) to transfer this case to the U.S. District Court for the Northern District of Texas, where Plaintiff is incarcerated and where the events at issue took place. *See* Def.'s Mot. to Transfer or, Alternatively, for Partial Summ. J., ECF No. 9 [hereinafter Def.'s Mot.]. Alternatively, Defendant seeks partial summary judgment on Counts Two, Four, and Five on the ground that Plaintiff did not exhaust his administrative remedies as to those claims. *Id.* For the following reasons, the court denies Defendant's Motion in full.

## II. MOTION TO TRANSFER

In *Starnes v. McGuire*, the D.C. Circuit articulated several factors that courts should consider when deciding whether to transfer a case brought by a prisoner incarcerated outside of the District of Columbia. *See* 512 F.2d 918, 929–31 (D.C. Cir. 1974). Those factors include: (1) the prisoner's difficulty communicating with counsel; (2) the challenge of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed with which the case can be resolved; and (5) whether the case involves a national policy issue that may require the testimony of policymakers. *See id.*; *see also Royer v. Fed. Bureau of Prisons*, 934 F. Supp. 2d 92, 103 (D.D.C. 2013) (listing *Starnes* factors). Additionally, under 28 U.S.C. § 1404(a), a court is required to balance the "convenience of the parties and witnesses" and the "interest of justice" in deciding whether to transfer the case. Courts should consider a host of "private" and "public" interest factors in the balancing. *See Royer*, 934 F. Supp. 2d at 103–04 (setting forth factors). The moving party bears the burden of establishing that transfer is warranted. *See Smith v. Yeager*, 234 F. Supp. 3d 50, 55 (D.D.C. 2017).

Here, Defendant argues that three key factors weigh in favor of transferring this matter to the Northern District of Texas. First, Plaintiff is incarcerated there and the events at issue occurred in that district. Second, it will be more convenient to obtain evidence from witnesses to these events, including Plaintiff and prison administrators, in the Northern District of Texas. And, third, there is no local interest in the District of Columbia as to the parties' dispute. *See* Def.'s Mot. at 6–9.[1]

The court is unconvinced that these factors tilt the balance in favor of transferring this case. Most significantly, although not dispositive, Plaintiff challenges a national BOP policy that likely

---

[1] Citations to the parties' pleadings are to the page numbers electronically generated by CM/ECF.

will require taking evidence from headquarters officials. *See Starnes*, 512 F.2d at 929 ("[T]he existence of a national policy issue that may involve testimony by the policymakers is a factor to be considered by the district judge in determining whether transfer is appropriate under Section 1404(a)."); *see also infra* note 3. As Defendant's own exhibits show, the decision to reject Plaintiff's request to purchase and maintain a zafu and zabuton involved little more than reference to the BOP's national policy statement designating those items to be "congregate religious items," instead of "personal religious items." [2] *See* Def.'s Mot., Decl. of Sonya Cole [hereinafter Cole Decl.], ECF No. 9-3, Attachs. 3–5, at 31–42. So far as the court can tell, that decision did not involve the exercise of discretion by the Warden or involve the application of policy to circumstances unique to Plaintiff. Instead, the Warden made a straightforward decision based on the classification scheme devised by BOP policymakers. Accordingly, the testimony of the Warden and other prison officials at FCI Seagoville, while perhaps relevant, will likely be less critical to resolving this matter than the testimony of D.C.-based BOP officials who will defend the agency's classification of zafus and zabutons. The greater convenience of litigating this action in Texas for local prison officials therefore is a less weighty consideration in this case.[3] *See Royer*,

---

[2] The BOP's Program Statement Number P5360.09, titled "Religious Beliefs and Practices," provides that "[a] list of generally authorized and transferrable inmate religious property is contained in the Practical Guidelines for Administration of Inmate Beliefs and Practices TRM" ("Practical Guidelines Manual"). *Available at* https://www.bop.gov/policy/progstat/5360_009.pdf, at 14. The Practical Guidelines Manual lists zafus and zabutons as congregate religious items of the Buddhist faith. *Available at* http://www.acfsa.org/documents/dietsReligious/FederalGuidelinesInmateReligiousBeliefsandPractices032702.pdf, at 1.

[3] A declarant for Defendant, Alisha Gallagher, an attorney for the BOP, asserts that there may be as many as 15 witnesses who can offer relevant testimony, half of whom are in Texas. *See* Def.'s Reply in Further Supp. of Def.'s Mot., ECF No. 13, Decl. of Alisha Gallagher, ECF No. 13-1 [hereinafter Gallagher Decl.], ¶ 3. Gallagher does not, however, explain how the testimony of any particular witness in Texas bears on the legal questions presented here regarding the classification of Buddhist meditation cushions and mats as congregate religious items and whether such classification imposes a substantial burden on the exercise of the Buddhist faith. *See* 42 U.SC. § 2000cc-1. Notably, Gallagher also lists three witnesses in Washington, D.C., all of whom are high-ranking BOP officials—the agency's Acting Director, the Chaplaincy Services Administrator, and the Assistant Chaplaincy Services Administrator. Gallagher Decl. ¶ 3(e), (g)–(h). The listing of these officials confirms that Defendant will be relying on policymakers located at BOP headquarters to defend this case.

934 F. Supp. 2d at 104 (finding that the testimony of local prison officials did not compel transfer where "issues of national policy or decisions made by national officials [we]re relevant" to the case, namely, whether the policy violated the requirement of notice-and-comment rulemaking); *see also Stern v. Fed. Bureau of Prisons*, 515 F. Supp. 2d 153, 156 (D.D.C. 2007) (denying transfer where the "only issues before the court [we]re legal and pertain[ed] to the Bureau's authority to promulgate" a regulation).

Other factors do not counsel for or against transfer. The need for Plaintiff's physical presence in the District of Columbia, at least for discovery, is unclear, as his deposition could be conducted remotely via video conference. Moreover, Plaintiff's ability to communicate with counsel will fare no better in Texas than it would here, as Plaintiff's counsel is in Vermont. *See* Compl. at 12. And, finally, the court is not moved by the purported quicker time in which this matter might get resolved here versus in the Northern District of Texas. *See* Def.'s Mot. at 8. Such statistics, stripped of any context, do not tell the court much about the relative congestion and complexity of the districts' respective dockets.

The cases upon which Defendant primarily relies are distinguishable. *See* Def.'s Reply in Further Supp. of Def.'s Mot., ECF No. 13, at 3. *Zaykiya v. United States* involved Federal Tort Claims Act and *Bivens* claims brought by an inmate who claimed that prison officials had over-detained him for three years for his refusal to agree to a proposed installment plan for the payment of fines. 267 F. Supp. 2d 47, 49 (D.D.C. 2003). There, the court found that venue was *improper* in the District of Columbia and that it lacked personal jurisdiction over a number of individual defendants, and therefore it was in the interest of justice to transfer the case to a district in which

personal jurisdiction over those defendants could be exercised.[4] *See id.* at 59–60. The considerations justifying transfer in *Zaykiya* are not present here.

The other key case that Defendant cites, *Chandler v. Stover*, 211 F. Supp. 3d 289 (D.D.C. 2016), is inapplicable for a different reason. There, a prisoner asserted *Bivens* claims against individual prison officials and the BOP for violating his free speech and due process rights, and for denying him proper medical care under the Eighth Amendment. *See id.* at 292–95. The court found that it lacked personal jurisdiction over the individual defendants and that venue was *improper* in the District of Columbia. *Id.* at 296–98. Moreover, the court did not transfer the case; it simply dismissed the complaint. *Chandler* therefore does not address the factors for and against transfer that the court must consider here.

Accordingly, for the reasons stated, the court declines to transfer this matter to the Northern District of Texas.

## III.    MOTION FOR PARTIAL SUMMARY JUDGMENT

Alternatively, Defendant seeks entry of judgment in its favor as to Counts Two, Four, and Five for failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See* Def.'s Mot. at 9–10. Each of these counts challenges BOP's refusal to keep or make available zafus and zabutons during and immediately after an inmate's transfer to a new facility. *See* Compl. at 9–10. Defendant asserts that Plaintiff did not specifically raise the lack of access to these items during transfer periods in any of his complaints

---

[4] Here, Defendant has not asserted that venue is improper in this district. *See* Fed. R. Civ. P. 12(b)(3). Having failed to raise that ground for dismissal in its Motion, Defendant has waived it. *See* Fed. R. Civ. P. 12(h)(1).

to prison officials. *See* Def.'s Mot. at 10. The court denies Defendant's request for entry of partial summary judgment, at this time, for two reasons.

First, Defendant has offered no evidence about the degree of specificity prisoners at FCI Seagoville must include to lodge administrative complaints. In *Jones v. Bock*, the Supreme Court held that "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007). Here, the record contains no evidence as to the level of specificity Plaintiff was obligated to provide when registering his grievances. *See* Cole Decl., Attach. 3, at 33 (BOP form for requesting administrative remedies provides that there are "[a]dditional instructions on reverse," but the back page is not included in the record). The court therefore cannot determine at this point whether Plaintiff exhausted his remedies as to the counts at issue.

Second, courts have held that, when prison grievance procedures are silent or incomplete as to the degree of specificity required to seek redress, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *accord Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (adopting *Strong* standard); *Aref v. Holder*, Civil Action No. 10-539 (BJR), 2013 WL 12341048, at *4 (D.D.C. Feb. 19, 2013) (same). Here, if it were to turn out that the rules applicable to Plaintiff were silent or incomplete with regard to the specificity of a complaint, the notice standard articulated in *Strong* arguably would be satisfied. At the heart of Plaintiff's administrative grievances was the BOP's treatment of zafus and zabutons as congregate religious items that he could not purchase and keep with his personal property. *See* Cole Decl., Attach. 3, at 34 (attachment to Plaintiff's request for

7

administrative remedy). That designation also implicates an inmate's ability to carry or to access those items during transfer periods. *See* Practical Guidelines Manual, http://www.acfsa.org/documents/dietsReligious/FederalGuidelinesInmateReligiousBeliefsandPractices032702.pdf, at 1 ("The list of personal religious property items is generally transferrable to all institutions in the Bureau of Prisons."). Thus, it would appear, at least on the current record, that Plaintiff gave the BOP adequate notice of his claims regarding lack of access to meditation mats and cushions during transfer periods and therefore exhausted his administrative remedies. The court need not, however, make a formal finding on exhaustion, as a final determination will have to await factual development on the rules governing the grievance process.

Defendant's motion for partial summary judgment is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Transfer or, Alternatively, for Partial Summary Judgment is denied.

Dated: October 15, 2018

Amit P. Mehta
United States District Judge